Good morning, Your Honor. I'm Joseph Oydarko from the government. Good morning, Your Honor. Steve Lemons from the appellant. All right. If I might reserve three minutes, Your Honor. Sure. Your Honor, if it pleases the Court, we're here basically to talk about three issues. One is the plain language of the judgment and commitment that was written by Judge Enright concerning the restitution obligation of my client, Ms. Hayes. We contend that the plain language of that judgment and commitment can't be read any other way but to stop payments on the restitution five years after she was released from custody. We're aware of the 3364, or 3663H payment schedule statute. We're aware of the government's position that, well, Judge Enright really didn't mean to really limit restitution like he put in the judgment and commitment. He meant to limit it under that statute, under the 3363H. But that's not what he did. Judge Enright not only put in the judgment and commitment, the language that's unambiguous, that's clear, he also wrote a memorandum decision in which he sets out 3663H and the other restitution statutes. And clearly, by this memorandum decision that he writes, he understands what the law is. The government argues that basically Ms. Hayes is arguing that the judge made a mistake or that the judge really meant to put, the judge didn't really mean what he said in his judgment and commitment. He really didn't understand what he was saying when he put that in there. He meant to add subject to 3663H. And, of course, Judge Enright could have added that to the judgment and commitment. So basically what we ended up with is a judgment and commitment handed to the defendant and handed to the defense counsel that says this, you're going to make these payments, $50 while you're in custody, $150 while you're not in custody, and you're going to make these payments for a set period of time, and then the payment schedule's going to end. That's basically what it says. But you're saying that the whole order is illegal, right? That brings us to our next issue. Well, that brings you to your arguing that that order that you said Judge Enright did so deliberately is illegal. Well... Am I right? I think the term I used was unlawful, but you are right. Am I lawful? You are right. And we state that it's unlawful because the government didn't comply with 3664. And they knew they didn't comply with 3664. And then they kept collecting the restitution, even though they knew they didn't comply with 3664. Well, you know, you make the argument first that we should construe the order in the way that you say is unambiguous, right? Correct. Then your next argument is no matter what the order says, it's illegal. True? Yes. And which should we start with? Well... We should start with the question of whether or not it's illegal before we care what it says, should we not? We can certainly do that, Your Honor. I think if we look at the judgment and say it's plain, it's unambiguous, we don't need to interpret it and add anything to it, that pretty much disposes of the issue. Well, except that your client paid some money that you say is under an illegal order and the government was saying it was illegal. Now, that's serious. It is serious. And are you saying forget about that? No, I don't say forget about it. In fact, I think one of the remedies that we requested was if this Court would find that an illegal order, then we would ask that the district court apply those fees, those payments that she made so religiously under restitution to her client. So forgive her restitution? Well, if the restitution order was illegal, we don't have to forgive anything. What we do is we look at the Ninth Circuit's opinion in the second case that says, well, the government didn't do its job here, the Court should have ordered the 3664 independent evaluation. Obviously, the government knew that the order was unlawful. They had every reason to know it. They were in court. They had the opinion from the Ninth Circuit. They had everything that this particular defendant didn't have because she wasn't around. So that's basically our position is that You said three things. You've talked about two. Well, the third thing is kind of goes along with the second one. It's whether or not the conduct of the government in continuing to collect this restitution should have any effect on either the monies that she already paid or on their continued ability to collect money. That's basically the third issue. All right. Does the Court have any other questions? No. Thank you. May it please the Court. I will address the issues or try to in the same order that the defendant is raising. The first issue concerning whether the plain language of the statute ended the restitution obligation after the expiration of the five-year scheduled payment. I just don't see how the language of the restitution order supports that argument. Defendant is relying on one sentence at the conclusion of the restitution order. It's in the excerpt of records, page 68, that says this payment schedule. It doesn't say the payments end. It says this payment schedule shall end five years after the end of the term of imprisonment imposed. So it ends the payment schedule, which the statute required. There was a statutory limit at that time that the payment schedule could not go on for more than five years. If you look at the rest of that paragraph, the very first paragraph, very first sentence of that paragraph says full restitution is mandatory under the Scams Act. And then the judge also ordered alternatively full restitution under the VWPA. And then if you look at the eight preceding pages of the judgment that this restitution order is part of, it starts out by saying that the defendant shall make payment to the following payee, and then goes on for eight pages and lists each victim and the amount of restitution that they're supposed to pay. So I think it's very clear the district court was ordering full restitution to all the victims. And I don't see how the restitution order can be read any other way, right in the context of the full judgment that's in the excerpt of records. In addition, if you look at the district court's opinion when it's talking about imposing restitution on remand, there's a footnote 2 in the opinion, which appears on excerpt of records, page 78, where the district court basically, you know, says, look, I know I can only order the payment schedule for five years, but the debt is going to continue for 20 years under the operation of the restitution statutes, and that after that, it's up to the government and the victim to enforce the restitution order. And so the way it works is once the payment schedule ends, whatever remaining balance of the restitution is due is basically reduced to a civil judgment, and it's up to the government to use the usual enforcement remedies that apply in enforcing civil judgment, such as a writ of garnishment in this case. Was this order joint and several with the co-defendants? I'm sorry, Your Honor. Was the restitution order joint and several with the co-defendants? No, Your Honor. Each – Okay. Well, this had been sort of a boiler room operation where they were calling different people, so each defendant was ordered to pay restitution to the people they had called and had sent in money. For some reason, the co-defendants got off easy, apparently. Yes, they did, Your Honor. And defense counsel kind of keeps trying to put the blame here on the government, but the government tried to get the restitution from the co-defendants as well. What happened is when it went up on the second appeal and this Court said, well, there isn't – you didn't – the district court didn't comply with the terms of the statute in ordering an independent accounting, it went back down to the district court. At that point, the government supplied the information it had that it had used in calculating the victims and the amount of losses, provided that to the probation department, provided it to the defense, you know. But at that point, what the statute required was that the probation office then do an independent accounting, that the probation office contact all the victims. And it was at that point that the district court said, look, this is just too much work. We've been going on for a long time. I don't think that we're – these people are going to get any relief. The victims are going to get any relief. It's just not worth the effort. And under the statute, the Court was allowed to make those findings and terminate the restitution orders. With respect to whether the restitution order is unlawful, I think Judge Levy, you kind of made an interesting point here, because it's a little unclear to me what the defendant is saying here. He's saying the restitution order is unlawful in the same sense that this Court found that the co-defendant's orders were unlawful. But the remedy there in which the Court granted to the last time to the co-defendants would be to send it back down to the district court and see if it could be straightened out and whether the amounts could be determined through an independent accounting. But the defendant seems like he doesn't really want that. He's – that's why he's raising this separate issue, which is completely independent of what happened with respect to the co-defendant's orders concerning the plain language of the statute. And the reason I think he's doing that is because under that argument, he gets out of – he's trying to say that that's it. They're done with restitution. There's no more restitution, period. With respect to the question of whether the restitution order is unlawful, I – the defendant never appealed her restitution order. She had the opportunity to do that. And at this point in the proceedings, seven years later, a restitution order is part of a criminal judgment. It just can't be reopened. This isn't a direct appeal of the restitution order. Seven years have gone by. The defendant never challenged her restitution order. And the only – the only reason the prior restitution order was – the co-defendant's orders were found unlawful was because there was a failure to comply with the statute. Well, the defendant, by not appealing, she waived her statutory right to have an independent accounting determined by the probation office. During the course of these proceedings, the defendant has never contested the amount of losses or the victims, the payments to the victims. So there's no reason to believe that there's anything wrong with the – with the restitution order as it now stands. The final issue I'd like to address briefly is that our position is that there's no – there's – the district court simply had no jurisdiction to grant the relief that the defendant was seeking here. I mean, what we're doing at this point is the government was trying to enforce the balance of the restitution order in the same manner as it would enforce any other civil judgment by filing a writ of garnishment. And it was doing this under the Federal Debt Collection Procedures Act. And under that Act, there's a fairly limited – the defendant at that point is not allowed under the Act to come back in and start contesting the validity of the underlying debt. They can contest the way in which the writ of garnishment is issued and things along those lines and whether the property would be exempt, but you can't raise the claims that the defendant is raising now. There's no jurisdiction. There's no basis for the district court to grant that relief. Unless the Court has further questions, we submit the – I just have a general question now. You have collected some $10,000. Over $11,000, Your Honor. $11,000. And that money is someplace. Well, Your Honor, that money was recently distributed to the victims. It's collected by the district court, and the district court keeps it in a restitution fund. So it has now been – it has now been distributed to the victims? Yes, Your Honor. In February of 2006, earlier this year, there was a distribution – a pro rata distribution to the victims. But what they do is – there's 131 victims here. And so, you know, administratively, sending out checks, you know, it all gets kind of expensive. So they try to hold the money until they get a fairly significant amount that they can send the checks. But she was ordered to make restitution to 131 victims? 131, yes, Your Honor. And so that $11,000 was somehow divided among those 11 – those – that number, and they were – Right. It was divided based on the amounts that they had sent in. I think I read someplace in here that you were still holding the money. I think that may have been – that may have been true at the time. Okay. But it has been distributed. All right. Thank you. Is it kept in an interest bearing account? I believe it is, Your Honor. Yes. I've got to make sure. Sometimes they don't do that. Sometimes the district court's accounts do not call the interest. I will check on that, Your Honor. Okay. Thank you, Your Honor. Thank you. Just briefly, Your Honor. As to the jurisdiction, the court – the government brought this case to the district court, and they said, we want to enforce this restitution order. And the restitution order basically says we're going to stop payments five years after. So I think it was within the district court's power or within their jurisdiction to at least interpret what the district court wanted to do with that restitution order. So I don't think there is a difficulty with jurisdiction in this case. We'll run that by me again. Okay. Basically – Wait a minute. Your brief, your reply brief, recites all the things you're not doing, right? You're not seeking to change the judgment. You're not seeking to do any of the things that the government says you can't do. Under the authority that the government set up as, like, I like to call them straw arguments. We're not proceeding under Rule 35. Yeah, all right. I understand. But now, how specifically did this issue get in front of the district court?  Well, they don't just go to the district court and say we're here to collect. They move or they seek a – A writ of garnishment. And so they sought a writ of garnishment from the clerk. That's correct. I believe that's right. And that's when you put in your opposition to that. That's when I was contacted from my client and she says, I don't think I should still be paying this. And, of course, the government – So you didn't ask the district court for anything. You just asked the district court to quit. Well, we found a motion basically to remit the restitution, remit the fine, and not award the garnishment. Well, then you didn't move for something. We did. Okay. Okay. After the government had its writ. That's correct, Your Honor. All right. That's correct. Okay. Now I got it. All right. Go ahead. Oh, thank you, Your Honor. Your Honor, the government always had the opportunity and they continue to have the opportunity to comply with the statute. This court basically said in the bagot number two that there needs to be an independent evaluation. We don't have any problem with the government seeking an independent evaluation. This is something they should have done over seven years ago, and they knew they should have done it. When the co-defendants came to this court and got relief from this court because the government didn't comply with the statute, the government at that time could have complied with the statute as far as the other two defendants go. They still have that opportunity. They've always had that opportunity, but they've never taken advantage of it. They knew they were in violation of the statute. They knew the order was unlawful. They just kept enforcing it, and they kept taking this lady's money. If we look at the effect of continuing to violate the statute, what's the effect on the victims? Well, I just found out this morning that the victims got paid a pro rata share. Before, they hadn't got paid at all. The last time we were in district court, they hadn't got paid a penny, and there was no plan to pay them. There was no specific plan to say, yes, we've collected enough money. Maybe we should pay some of this out. Because they didn't have an independent evaluation and they didn't know the exact amounts from these victims, they didn't know if the victims had died, if the victims had estates that they needed to pay, if the victims had heirs that the government needed to pay this money to. That's what happens when you don't follow the congressional mandate of the statute. It just gets all screwed up. It makes a lot of work for lawyers, doesn't it? It does. And I think with that, that's all we have, unless the Court has any other further questions. Thank you. Thank you. We're done, right? Yeah. We're done until 8 a.m. tomorrow morning. 8 a.m. 8 a.m. All rise. The Court of Discussion stands adjourned.  Thank you.
judges: Leavy, Pregerson, Beistline